Christine SULLIVAN, By and Through Michele SULLIVAN, her Guardian Ad Litem, Plaintiff,

v.

VALLEJO CITY UNIFIED SCHOOL DISTRICT; The Governing Board of the Vallejo City Unified School District; Henry Elliott, Hal Pickens, Francesca Demgen, Coke Morrison, Gina Snyder, in their capacities as members of The Governing Board of the Vallejo City Unified School District; M. Dale Welsh, in his capacity as Superintendent of The Vallejo City Unified School District; Edward W. Brower, in his capacity as Director of Special Services for The Vallejo City Unified School District; Joseph Jones, in his capacity as Principal of Hogan Senior High School, Defendants.

No. CIV. S–89–1505 LKK.

United States District Court,
E.D. California.

March 1, 1990.

948

Sidney Wolinsky and Linda D. Kilb, Disability Rights Educ. & Defense Fund, Berkeley, Cal., for plaintiff.

Jan K. Damesyn and Scott Yarnell, Kronick, Moskovitz, Tiedmann & Girard, Sacramento, Cal., for defendants.

Marian M. Johnston, Deputy Atty. Gen., Sacramento, Cal., for amicus State of Cal.

## ORDER

KARLTON, Chief Judge Emeritus.

Plaintiff is a 16–year old disabled student at Hogan Senior High School in Vallejo, California. She has cerebral palsy, learning disabilities and rightside deafness. In her first amended complaint, filed on December 26, 1989,[1] plaintiff alleges that she

1. Plaintiff originally filed a verified complaint with this court on October 31, 1989. In lieu of filing an answer, defendants noticed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on November 20, 1989. Defendants' argument that plaintiff acted improperly in filing an amended complaint is erroneous. Federal Rule of Civil Procedure 15(a) allows a plaintiff to amend her complaint once as of right any time prior to the filing of a responsive pleading. The Ninth Circuit has repeatedly held that a motion to dismiss the complaint is not a responsive pleading for purposes of this rule. *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984), and cases cited therein. Because plain-

currently uses a wheelchair for mobility. In February 1988, she participated in an intensive two-week training program organized by Canine Companions for Independence ("Canine Companions"), an organization that trains service dogs for use by people with disabilities. First Amended Complaint at paras. 16 and 17; Declaration of Bonita Bergin in Support of Motion for Preliminary Injunction at 1. At the conclusion of the training, plaintiff received a service dog for a probationary period which she subsequently completed. *Id.*

Plaintiff complains that defendants have refused to allow her to bring her service dog to school in violation of rights secured by section 504 of the Rehabilitation Act of 1974, 29 U.S.C. § 794, California Civil Code §§ 54.1 and 54.2, and California Civil Code § 51 (Unruh Civil Rights Act). Accordingly, she seeks injunctive and declaratory relief against the Vallejo City Unified School District, several school administrators and various members of the Vallejo School Board. She also seeks damages under claims for intentional and negligent infliction of emotional distress.

The matter is currently before the court on defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and plaintiff's motion for a preliminary injunction.

I

DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss plaintiff's Rehabilitation Act claim, arguing that plaintiff has failed to exhaust available administrative remedies and thus this court is without subject matter jurisdiction. Defendants seek dismissal of plaintiff's pendent claims for failure to state a claim. For the reasons I explain below, the motion is denied.

tiff's amended pleading does not attempt to cure the asserted defects complained of by defendants, the court will treat the motion to dismiss as if it was directed to the first amended complaint.

### A. *The Rehabilitation Act Claim*

#### 1. *Standards*

It is well established that the party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the standards that must be applied vary according to the nature of the jurisdictional challenge. I have previously examined the mode of ascertaining and applying those standards, *see Cervantez v. Sullivan*, 719 F.Supp. 899, 903 (E.D.Cal.1989), and it is unnecessary to repeat that discussion at length here.

A complaint will be dismissed for lack of subject matter jurisdiction (1) if the cause does not "arise under" any federal law or the United States Constitution, (2) if there is no case or controversy within the meaning of the constitutional term, or (3) if the cause is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 699, 7 L.Ed.2d 663 (1962).

#### 2. *Exhaustion of Claims*

Defendants contend that this court lacks jurisdiction to entertain plaintiff's section 504 claim because she has failed to exhaust the administrative remedies provided by the Education of the Handicapped Act, 20 U.S.C. § 1400 et seq. ("EHA") as required by the Handicapped Children's Protection Act of 1986, 20 U.S.C. § 1415(f) ("HCPA"). Resolution of the motion turns upon a close examination of the relationship of the three statutes. I undertake that task below.

Section 504 to the Rehabilitation Act of 1973 generally prohibits discrimination against disabled individuals by federally funded programs.[2] The implementing reg-

---

2. The Act provides in relevant part: "No otherwise qualified individual with handicaps as defined in Section 706(8) of this Title shall, solely by reason of his or her handicap, be excluded from participation in, be denied the benefits of,

ulations promulgated by the Department of Education make clear that educational institutions, including preschool, elementary and secondary schools that receive federal funds come within the ambit of the statute. *See* 34 C.F.R. §§ 104.31, et seq.; *see also Timms v. Metro. School Dist. of Wabash Cty. Ind.*, 722 F.2d 1310, 1317 (7th Cir. 1983). The statute has been interpreted to require federal grantees to modify or excuse non-essential requirements which impede a disabled person from participating in the grantee's federally funded program. It has been held that a grantee's refusal to make "reasonable accommodations" for the disabled person can only be explained as "unreasonable or discriminatory." *Southeastern Community College v. Davis*, 442 U.S. 397, 413, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979).

The Education of the Handicapped Act, 20 U.S.C. § 1400, on the other hand, is a funding statute "passed in response to Congress' perception that a majority of handicapped children in the United States 'were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to drop out.' " *Bd. of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 179, 102 S.Ct. 3034, 3037, 73 L.Ed.2d 690 (1982), *citing* H.R.Rep. No. 94–332 at 2 (1975). To achieve the goal of ensuring that all handicapped children obtain a "free appropriate public education," the statute imposes on federally subsidized schools an affirmative obligation to create an "individualized education program" ("IEP") for each child who, as a result of a physical, mental or emotional disability, "require[s] special education and related services." 20 U.S.C. § 1401(a)(1) and (5). The Supreme Court

has held that the substantive requirements of the statute are satisfied where the handicapped child receives "personalized instruction and sufficient support services to permit the child to benefit educationally from that instruction." *Hendrick*, 458 U.S. at 203, 102 S.Ct. at 3049. The High Court has determined that the guarantee of equal protection requires no more than the provision of a "basic floor of educational opportunity." *Id.* at 200, 102 S.Ct. at 3047. The statute, however, does impose extensive procedural requirements upon participating states. Thus it requires that the parents or guardians of handicapped children be provided notice and an opportunity to be heard in an administrative proceeding regarding any proposed changes in the child's educational program or placement. *See* 20 U.S.C. §§ 1415(b)(1)(D), 1415(b)(1)(E), 1415(b)(2) and 1415(c).[3]

In the context of primary and secondary education, EHA and section 504 present "a complimentary set of standards ... to determine the appropriate educational setting for a handicapped child." *Martinez By and Through Martinez v. School Bd. of Hillsborough Cty., Fla.*, 861 F.2d 1502, 1505 (11th Cir.1988). While EHA and section 504 create parallel remedies where a school district fails in its obligation to provide a handicapped child with a basic floor of educational opportunity, *see Timms*, 722 F.2d at 1318, the substantive rights created by the two statutes are distinct. Moreover, in certain circumstances, section 504 creates greater substantive rights than those available under EHA. *See Smith v. Robinson*, 468 U.S. 992, 1021, 104 S.Ct. 3457, 3473, 82 L.Ed.2d 746 (1984). For example, section 504 provides a remedy, unavailable under EHA, where a disabled student has been provided basic educational opportuni-

---

or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

**3.** These provisions confer on handicapped children and their parents a broad right to have complaints resolved at a full adversary hearing before an impartial hearing officer under the auspices of the state or local educational agency in connection with "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free

appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E), (b)(2) and (c). Where the complaint is initially heard at the local or regional level, an appeal must be available before the state educational agency. 20 U.S.C. § 1415(c). Thereafter, a party "aggrieved by the findings and decisions" achieved through the administrative process may file a civil action "in any court with jurisdiction." 20 U.S.C. § 1415(e)(2).

ties but has been treated arbitrarily or in a different manner than similarly situated able-bodied students by virtue of his or her handicap.

Finally, a third statute must be considered. In 1986, Congress passed the Handicapped Children's Protection Act ("HCPA") as an amendment to EHA. 20 U.S.C. § 1415(f). HCPA requires exhaustion of the EHA administrative remedies prior to filing suit under Section 504 to the extent that the relief sought in the section 504 action would be equally available under EHA. The statute makes clear, however, that EHA does not "restrict or limit the rights, procedures and remedies available under ... Title V of the Rehabilitation Act of 1973." 20 U.S.C. § 1415(f).

Plaintiff seeks a court order requiring the school district to allow plaintiff to be accompanied by her service dog at school. Defendants argue that to achieve this goal, plaintiff can convene an IEP hearing for the purpose of determining whether she requires the assistance of the service dog to obtain the educational benefits guaranteed to her by EHA. Defendants conclude that since the possibility exists that plaintiff could achieve her objective through the IEP process, through a finding that the service dog would be of some educational benefit to plaintiff, this court's jurisdiction over parallel causes of action is conditioned on her exhaustion of these procedures pursuant to the HCPA. The argument will not lie.

Defendants' argument is premised on the erroneous assumption that plaintiff claims she is being deprived of a "free appropriate public education" within the meaning of EHA as a result of defendants' decision to exclude her service dog from the school premises. Plaintiff, however, does not dispute that the IEP created for her pursuant to EHA is adequate from an educational standpoint, nor has she alleged that the

service dog is educationally necessary. Properly construed, plaintiff's claim is that whether or not the service dog is educationally necessary, defendants have discriminated against her on the basis of her handicap by arbitrarily refusing her access if she is accompanied by her service dog.

The consequences of plaintiff's pleading relative to defendants' motion seems quite straightforward. Under plaintiff's complaint, she may prevail by demonstrating that failing to make reasonable accommodations for her use of a service dog amounts to arbitrary discrimination.[4] *Davis*, 442 U.S. at 413, 99 S.Ct. at 2370. Put another way, once plaintiff has made a threshold showing that her decision to use the service dog is reasonably related to her disability, the sole issue to be decided under section 504 is whether defendants are capable of accommodating plaintiff's choice to use a service dog. The issue of whether the service dog enhances plaintiff's educational opportunities, which is central to the EHA inquiry, is completely irrelevant under section 504. It thus cannot be said that the relief sought by plaintiff—an order restraining defendants from excluding plaintiff's service dog whether or not it is educationally enhancing—is available under EHA. Accordingly, plaintiff need not exhaust the EHA administrative remedies, and defendants' motion to dismiss the federal claim for lack of subject matter jurisdiction must be denied.

### B. *Pendent State Law Claims*

Defendants also seek dismissal of plaintiff's claims brought pursuant to California Civil Code § 51 (Unruh Civil Rights Act), and California Civil Code §§ 54.1 and 54.2.

#### 1. *Standards*

■ I have repeatedly discussed the standards applicable to a motion to dismiss, *see, e.g., Johnson v. City of Chico*, 725

---

4. Throughout her briefing, plaintiff suggests that section 504's non-discrimination mandate guarantees her "the right to define her own completeness, even if that completeness includes accommodating an animal." Plaintiff's Reply Memorandum at 13 (filed December 4, 1989). This is not the law. Although as I ex-

plain *infra*, section 504 prevents defendants from questioning the validity of plaintiff's choice to use a service dog to increase her physical independence, defendants remain free to exclude the dog if they can show that no reasonable accommodations are available.

F.Supp. 1097, 1098 (E.D.Cal.1989), and no purpose would be served by repeating that discussion here. It suffices to observe that on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint is construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)).

### 2. The Unruh Civil Rights Act Claim

■ The Unruh Civil Rights Act provides, in relevant part:

All persons within the jurisdiction of this state are free and equal and no matter what their sex, race, color, religion, ancestry, national origin or blindness or other physical disability are entitled to full and equal accommodations, advantages, facilities, privileges, or services in business establishments of every kind whatsoever.

Cal.Civ.Code § 51. Defendants contend that plaintiff's Unruh Act claim fails because a public high school is not a "business establishment" within the meaning of the statute. While this argument has the appeal of "plain meaning," it cannot prevail. The California Supreme Court has taught that the "Legislature's desire to banish [discrimination] from California's community life has led [that] court to interpret the Act's coverage 'in the broadest sense reasonably possible.'" *Isbister v. Boys Club of Santa Cruz, Inc.*, 40 Cal.3d 72, 76, 219 Cal.Rptr. 150, 707 P.2d 212 (1985), *citing Burks v. Poppy Construction Co.*, 57 Cal.2d 463, 468, 20 Cal.Rptr. 609, 370 P.2d 313 (1962). Under a parity of the reasoning adopted in *Isbister*, it appears relatively certain that it is "reasonably possible" that "business establishments" as used in the statute includes public schools.

The Unruh Act, adopted in 1959, "emanates from and is modeled upon California's earlier statute forbidding arbitrary discrimination in public accommodations." *Isbister*, 40 Cal.3d at 78, 219 Cal.Rptr. 150, 707 P.2d 212. Its predecessor statute, first adopted in 1897, derived from the common law doctrine prohibiting arbitrary discrimination by public enterprises. *Id.*

The Unruh Act "expanded the reach of the prior public accommodations statute from common carriers and places of public accommodation and recreation such as railroads, hotels, restaurants and theaters" to include "all business establishments of every kind whatsoever." *Id., citing Marina Point, Ltd. v. Wolfson*, 30 Cal.3d 721, 731, 730, 180 Cal.Rptr. 496, 640 P.2d 115 (1982). This language was included in the Unruh Act to vindicate the Legislature's "concern that the courts were construing the 1897 public accommodations statute too strictly." *Id.* The Court has explained that:

The original version of the bill which became the Unruh Act extended its antidiscriminatory provisions to "all public or private groups, organizations, associations, business establishments, schools, and public facilities...." Later versions dropped all the specific enumerations except "business establishments" but added to the later phrase the modifying words "of every kind whatsoever."

The broadened scope of business establishments in the final version of the bill, in our view, is indicative of an intent by the Legislature to include therein *all private and public groups or organizations* [specified in the original bill] that may reasonably be found to constitute "business establishments of every type [sic] whatsoever."

*Isbister, quoting O'Connor v. Village Green Owners Ass'n*, 33 Cal.3d 790, 795–96, 191 Cal.Rptr. 320, 662 P.2d 427 (1983) (citations omitted; emphasis added in *Isbister*).

Under this interpretation, the California Supreme Court has found that a non-profit homeowners' association, *O'Connor*, and a non-profit boys club, *Isbister*, qualified as "business establishments" under Unruh.

In like fashion, since public schools were among those organizations listed in the original version of the Unruh Act, it must follow that for purposes of the Act they are business establishments as well.[5] In view of the California Supreme Court's broad reading of the statutory language as well as its understanding of the intention of the Legislature as read against the historical background, the motion to dismiss plaintiff's Unruh Act claim must be denied.

### 3. Civil Code Section 54.2

■ In addition to the general prohibition on arbitrary discrimination created by the Unruh Act, the California Legislature has specifically determined that physically disabled individuals shall have the right to be accompanied by a service dog in places of accommodation. *See* Cal.Civ.Code §§ 54.1(a), 54.2(a). The right of access created by these statutes extends to a broad range of facilities including

> Common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats or any other public conveyances or modes of transportation, telephone facilities, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited....

Cal.Civ.Code § 54.1(a).

Defendants contend that plaintiff cannot state a claim under this statute. They argue that since public high schools may restrict access to their premises, facilities of this type cannot be characterized as "places to which the general public is invited." Defendants' assertion that Cal.Civ. Code § 54.1 does not apply to facilities that restrict access to certain sectors of the population for administrative or other non-discriminatory reasons cannot be reconciled with either the statute's inclusive language or its remedial purpose. While the terms "public accommodations" and "places to which the general public is invited" are not defined in the statute itself, in view of the comprehensive statutory scheme designed to ensure that disabled persons in California have "the same right as the able-bodied to the full and free use ... of public places," Cal.Civ.Code § 54, these terms must be construed broadly.

As the California Attorney General has concluded in an analogous context, "for purposes of Sections 54.1 and 54.2, it is irrelevant that some groups of the general public are excluded from the facility." 70 Ops.Cal.Atty.Gen. 104, 107 (1987) (private medical facilities deemed public accommodations for purposes of Civil Code §§ 54.1 and 54.2). Rather, the statute mandates that to the extent a facility is open to members of the general public, even where some sectors of the population have been excluded, access must be equally available to disabled and able-bodied persons alike. *See id.* To construe the statute in any other manner would undermine its evident remedial purpose. There are few, if any, public facilities which are open to every member of the general public without limitation. Under defendants' theory, any public facility that provides services on an unlimited basis to a particular segment of the population would be free to discriminate against disabled individuals who meet the other admission criteria, but who require the services of a guide, signal, or service dog.[6] Under this interpretation, the catch-all category included at the end of the specifically enumerated list would severely restrict, rather than broaden, the type and number of facilities subject to the statutory non-discrimination mandate. It seems ap-

---

**5.** I note in passing that one of the pre-Unruh decisions which the Legislature acted to overrule, when it adopted Unruh in 1959, had held that private schools were not subject to the existing public accommodations statute. *Reed v. Hollywood Professional School,* 169 Cal. App.2d Supp. 887, 338 P.2d 633 (1959).

**6.** For example, certain businesses, such as drinking establishments and movie theaters, routinely exclude minors but remain open to all other members of the general public. Publicly financed housing excludes persons on the basis of income. Private hospitals limit their services to persons with the ability to pay. Public libraries exclude persons who make noise. Under defendants' theory, each of these business establishments would be exempt from the requirements of California Civil Code section 54.2 on the ground that certain sectors of the general population are excluded.

parent that such a construction conflicts with the statute's underlying objective of creating conditions which would increase the participation of disabled persons in public life.

Defendants make a related argument that the Legislature's intent to exclude public schools from the scope of Civil Code section 54.1 is evidenced by California Education Code section 39839 which excludes school buses from the scope of California Civil Code section 54.1. It appears to the court, however, that the Education Code provision, to the extent it is relevant at all, suggests a conclusion quite the opposite of that argued for by defendants. The existence of a specific exemption to the application of California Civil Code section 54.1 in the education area suggests that the Legislature was fully aware of the statute's effect and limited its scope where it thought appropriate.

Contrary to defendants' assertion, public schools seem to fall comfortably within the ambit of Civil Code § 54.1. Public schools serve a significant segment of the population; indeed generally speaking, public school attendance is mandatory for California's children between the ages of six and sixteen. Cal.Educ.Code §§ 48200, et seq. Because the mission of the state's public schools is to educate all of California's children, it is difficult to even conceive of a rationale under which the Legislature would except schools from the important remedial function of the statute; certainly defendants tender none. Under these circumstances, defendants' motion to dismiss plaintiff's claim predicated on California Civil Code §§ 54.1 and 54.2 must be denied.[7]

### C. *Conclusion*

For the reasons articulated above, defendants' motion to dismiss plaintiff's discrimination claims must be denied in its entirety. I now turn to an analysis of whether plaintiff is entitled to preliminary relief under any of these theories.

## II

## PLAINTIFF'S PRELIMINARY INJUNCTION MOTION

### A. *Preliminary Injunction Standards*

Two threshold issues relative to the appropriate standards governing the instant motion are presented by this case. First, I must determine the standards applicable to plaintiff's request for a mandatory injunction pursuant to her federal Rehabilitation Act claim. Second, I must decide whether federal or state law standards govern a motion for preliminary relief relative to pendent state law claims where, as here, the court's jurisdiction is predicated on the presence of a federal question.

### 1. *Federal Mandatory Injunction Standards*

■ I begin by noting that the purpose of an award of preliminary relief as authorized by Federal Rule of Civil Procedure 65 is to preserve the relative positions of the parties—the *status quo anti litem*, or the last uncontested status—until a full trial on the merits can be conducted. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). The Ninth Circuit has explained that although "the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies," *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982), "where a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir.1984). Thus, under the law of this circuit, as a

---

**7.** It appears to the court, after reviewing defendants' response to the State of California's amicus brief, that defendants have abandoned their argument that public accessibility to disabled persons is governed by California Government Code § 4450, the architectural barriers statute, rather than California Civil Code §§ 51 and 54.1. Although it is apparent that this argument could not prevail for the reasons articulated in the initial brief submitted by Amicus, I will refrain from addressing the argument in any detail.

general rule mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *Anderson v. United States,* 612 F.2d 1112, 1115 (9th Cir.1979). "[I]n doubtful cases, or where the injury complained of is capable of compensation in damages" a mandatory injunction will not issue. *Id.*

Plaintiff concedes that the preliminary relief sought in this case is of a mandatory character; that concession is wholly appropriate in view of the fact that she has not previously been accompanied by her service dog at school. She argues, however, that the less stringent traditional standards, *see, e.g., Wilderness Society v. Tyrrel,* 701 F.Supp. 1473, 1476, 1477 (E.D.Cal.1988), govern where the injunctive relief sought would require the defendants to comply with federal civil rights laws. Plaintiff concludes that, in these circumstances, the injunction may be characterized as mandatory in form but prohibitory in effect. She relies on *People v. Mobile Magic Sales, Inc.,* 96 Cal.App.3d 1, 157 Cal.Rptr. 749 (1979), as the sole support of this proposition. Although *Mobile Magic Sales, Inc.* has analytical appeal, it was decided under California law, and as far as this court can determine, the Ninth Circuit Court of Appeals has not adopted this form of analysis.

Plaintiff also argues that the Ninth Circuit routinely employs the traditional preliminary injunction standards in section 504 cases without considering whether the relief sought is mandatory or prohibitory in character. I cannot agree. In all of the cases relied on by plaintiff, the preliminary injunctive relief sought was designed to return the parties to the last uncontested status and was therefore truly prohibitory in character.[8] Here, in contrast, plaintiff has never been accompanied by her service dog at school nor have defendants ever indicated that they would grant such a

request. An injunction requiring the defendant school district to make accommodations for the dog would thus alter the *status quo ante litem.* Absent indicia from the Ninth Circuit that the ordinary standards governing an award of mandatory preliminary relief are to be relaxed where civil rights violations are alleged, I must conclude that the conventional standards apply.

#### 2. *Pendent State Claims*

■ The second threshold issue I must resolve is whether federal or state law standards guide this court's determination of plaintiff's entitlement to a preliminary injunction on her pendent state claims. Both plaintiff and defendants agree that federal law supplies the controlling standards. Recognizing that state law standards are likely more favorable to plaintiff's position, however, Amicus, the State of California, reaches the opposite conclusion. It argues that where injunctive relief is authorized under state law to enforce a state law right, the *Erie* doctrine compels application of state law standards. Although this argument is not without strength, I conclude that it is erroneous.

It is clear that the principles enunciated by the Supreme Court in *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), regarding the application of federal or state law in the diversity context apply with equal force where the federal court exercises its pendent jurisdiction over state law claims. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Under the *Erie* doctrine, federal courts are bound to apply state substantive law and federal rules of procedure to state law claims. *Hanna v. Plumer,* 380 U.S. 460, 465, 85 S.Ct. 1136, 1140, 14 L.Ed.2d 8 (1965). The High Court has cau-

---

8. In *Chalk v. U.S. Dist. Court, Cent. Dist. of Cal.,* 840 F.2d 701 (9th Cir.1988), plaintiff sought reinstatement to her teaching position after being terminated on the basis that she had AIDS. Similarly, in *Thomas v. Atascadero Unified School Dist.,* 662 F.Supp. 376 (C.D.Cal.1986), plaintiff was a child with AIDS who sought an injunction compelling his readmission to school

after having been excluded on the basis of his disease. Finally, in *Kling v. County of Los Angeles,* 633 F.2d 876 (9th Cir.1980), *rev'd* 474 U.S. 936, 106 S.Ct. 300, 88 L.Ed.2d 277 (1985), plaintiff, who suffered from Crohn's disease, sought an injunction compelling the defendant nursing school to reinstate its prior decision admitting her to a nursing program.

tioned that "choices between state and federal law are to be made not by application of any automatic litmus test, but rather by reference to the policies underlying the *Erie* rule," *id.* at 467, 85 S.Ct. at 1141, and most particularly the policy which insures "substantial uniformity of predictable outcome between cases tried in federal court and cases tried in the courts of the state in which the federal court sits." *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945).

Amicus asserts that injunctive relief is a primary means of securing the rights guaranteed by both the Unruh Civil Rights Act and California Civil Code §§ 54.1 and 54.2. From this, Amicus concludes that application of state law standards for granting preliminary injunctive relief is crucial to ensuring that these rights are as fully protected in federal court as they would be in state court. This argument fails to recognize the important difference in the character of permanent and preliminary injunctive relief.

A permanent injunction is a creature of equity designed to enforce substantive law rights. 7 Moore's Federal Practice, Pt. 2, para. 65.18[1]. In this sense, the availability of injunctive relief is an integral component of the substantive law right. Where federal courts are called upon to adjudicate a claim predicated on state law, under either its diversity or pendent claim jurisdiction, there appears to be no question that the ultimate issue of whether injunctive relief may issue must be decided under applicable state law. *Id.* Were the rule otherwise, a substantial risk that different outcomes could be achieved in state and federal court would be presented in direct violation of the *Erie* doctrine. The purpose of a preliminary injunction, by contrast, is both to preserve the relative positions of the parties and minimize the risk of irreparable harm until a trial on the merits can be held." *Capital Tool and Mfg. Co., Inc.*

*v. Maschinenfabrik Herkules*, 837 F.2d 171, 172 (4th Cir.1988). Although the court makes an initial determination regarding the merits of the underlying claim, "a party is not required to prove his case in full at a preliminary injunction hearing ... and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Wilderness Soc'y*, 701 F.Supp. at 1476, *quoting University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981).[9] In sum, the standards supplied by Federal Rule of Civil Procedure 65 to aid the court in exercising its discretion cannot be characterized as either a component of the substantive right sought to be enforced or outcome determinative for purposes of the *Erie* doctrine. As the Ninth Circuit has recently explained, "Rule 65 merely sets forth the procedural terms for the issuance of injunctions and restraining orders and does not itself authorize injunctive relief." *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 646 (9th Cir.1988).

The above analysis is not meant to suggest that state law may not inform the court's exercise of its equitable powers in determining whether preliminary injunctive relief is available in a particular case. In order to make the determination that the moving party is likely to succeed on the merits of its substantive claim, a federal court must inquire into whether injunctive relief would be available as a matter of state law. Where a party seeks injunctive relief under a state law based claim which would not be available in the state forum, a federal district court may not exercise the discretion it has under the federal standard to grant an injunction. The Ninth Circuit implicitly adopted this analysis in the recent *Sims Snowboards* decision. There, the circuit vacated a district court order granting a preliminary injunction on a state law based breach of contract claim where injunctive relief was unavailable under Cal-

---

**9.** It is true that where preliminary mandatory relief is sought, a higher standard must be applied and the moving party bears a greater burden of persuasion. Nonetheless, the granting of preliminary mandatory relief like the granting of preliminary prohibitory relief is not a finding on the merits, and the court is free to reweigh the evidence and the law upon trial on the merits.

ifornia law. In reviewing the trial court order, the circuit referred explicitly to the procedural requirements of Federal Rule of Civil Procedure 65, but explained, "[t]he general equitable powers of federal courts should not enable a party suing in diversity to obtain an injunction if state law clearly rejects the availability of that remedy." *Id.* at 647. Similarly, in *Kaiser Trading Co. v. Associated Metals & Minerals Corp.,* the court explained that "the best approach would be to look to state law to determine if a preliminary injunction is permissible ... [and then to] look to federal law to determine whether the court should exercise its discretion." 321 F.Supp. 923, 931 n. 14 (N.D.Cal.1970), *appeal dismissed,* 443 F.2d 1364 (9th Cir.1971).

Here, plaintiff seeks a preliminary injunction on her state statutory claims for discrimination. It may be that the state law standards governing mandatory preliminary relief are more relaxed than the federal standards described above, *see People v. Mobile Magic Sales, Inc.,* 96 Cal. App.3d 1, 157 Cal.Rptr. 749 (1979), but that is not the issue. While a favorable ruling on plaintiff's motion represents an indication as to how the court will rule on the substantive issues, it in no way represents a final ruling on the merits. Given that conclusion, it appears to this court that federal law provides the standards governing plaintiff's motion for preliminary injunctive relief with respect to both her federal and state law claims. I now proceed to the substance of the motion.

### B. *Probability of Success on the Merits*

■ Plaintiff asserts an entitlement to a mandatory preliminary injunction on her federal handicap discrimination claim as well as her claims predicated on the Unruh Civil Rights Act, Cal.Civ.Code § 51 and California Civil Code §§ 54.1 and 54.2. Because I conclude that plaintiff has demonstrated a clear probability of success on the merits under section 504 of the Rehabilitation Act and California Civil Code sections 54.1 and 54.2, I need not reach her Unruh Civil Rights Act claim.

### 1. *The Section 504 Claim*

To make out a prima facie case of discrimination under section 504, plaintiff bears the burden of demonstrating that she is (1) "handicapped," (2) "otherwise qualified" to participate in the federally financed program and has been excluded from participation by reason of his or her handicap, and that (3) the relevant program receives federal financial assistance. *Doherty v. Southern College of Optometry,* 659 F.Supp. 662, 671 (W.D.Tenn.), *aff'd,* 862 F.2d 570 (6th Cir.1988). Once a prima facie case has been established, the burden shifts to the defendant to produce evidence to rebut the inference of discrimination. *Sisson v. Helms,* 751 F.2d 991, 993 (9th Cir.), *cert. denied,* 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985). As in all civil litigation, the plaintiff bears the burden of persuading the trier of fact by a preponderance of the evidence that the defendant engaged in impermissible handicap discrimination. *Id.* at 993. Where the issue of reasonable accommodation is at issue, as in this case, the defendant bears the burden of demonstrating that accommodations cannot reasonably be made that would enable the handicapped person to participate. *Id.* Thus, if the defendant proffers credible evidence that reasonable accommodation is not "possible or practicable," plaintiff bears the ultimate burden of coming forward with evidence that an accommodation may in fact be made. *Id.*

### a. *Prima Facie Case*

In the instant case, there is no dispute that plaintiff meets the first criteria for establishing a prima facie case of handicap discrimination. A person is "handicapped" within the meaning of the statute who has a physical or mental impediment which substantially limits one or more of such person's major life activities. 29 U.S.C. § 706(8)(B). Plaintiff here has cerebral palsy, a physically disabling condition, which severely limits mobility. Declaration of Vincent Pasquarillo in Support of Motion for Preliminary Injunction at 2. She uses the auxiliary aids of a wheelchair and a service dog to overcome her physical limitations. *Id.* at 2; Declaration of Christine

Sullivan in Support of Motion for Preliminary Injunction at 2–3. Moreover, it is not contested that the defendant high school district is a recipient of federal funds, and thus the third criteria is satisfied.

Defendants maintain that plaintiff cannot satisfy the second element necessary to establish a prima facie case, arguing that they have excluded only plaintiff's service dog from the school premises and not plaintiff herself.[10] Defendants' attempt to distinguish between plaintiff and her service dog for purposes of admission to the school premises cannot be reconciled with either the letter or the spirit of the Rehabilitation Act. The statute defines "handicapped individual" broadly to include both persons who are impaired and who are regarded as disabled. 29 U.S.C. § 706(8). Its dual purpose is to increase the participation of handicapped persons in society, *see Alexander v. Choate*, 469 U.S. 287, 300, 105 S.Ct. 712, 719, 83 L.Ed.2d 661 (1985), and "to ensure that handicapped persons are not denied ... benefits because of the prejudiced attitudes and ignorance of others." *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307 (1987). Because a central purpose of the Act is to prevent discrimination based on public perception of a person's handicap, deference must be shown to the manner in which a handicapped person chooses to overcome the limitations created by her disabling condition. Put simply, the statute requires accommodation to the plaintiff's handicap; it does not require that she accommodate to the views of the public about her condition. In sum, as long as the choices the handicapped person makes concerning how to effectively address her circumstances are reasonable, the Rehabilitation Act both protects those choices from scrutiny, and prohibits discrimination against the disabled person on the basis of those choices.

In the matter at bar, plaintiff has chosen to use a service dog to increase her physical independence and to decrease her need to rely on others to perform tasks that are beyond her own physical capacity. The choice to employ a service dog for these purposes is akin to choosing to use a wheelchair to increase her mobility rather than a pair of crutches. By excluding her service dog, defendants have asked plaintiff to assume a different persona while she attends school, i.e., the persona of a disabled person without a service dog. In this basic sense, the effect of defendants' decision to deny entrance to the service dog is to exclude the person who exists everywhere but in school, i.e., a disabled person with a service dog, from participation in the educational program as well. Because the statute does not permit such an exclusion, I conclude that plaintiff has made out a prima facie case of handicap discrimination under section 504.

b. *Impermissible Discrimination*

Plaintiff must also demonstrate a clear probability of success on the merits of her claim that, in violation of section 504, defendants have failed to make reasonable accommodations to her condition as a disabled person using a service dog. For the reasons I explain below, plaintiff has succeeded in this task.

The Supreme Court has held that section 504 imposes on federally funded programs a duty to accommodate handicapped persons, to the extent possible, to ensure that non-essential requirements and practices do not "arbitrarily deprive genuinely qualified persons of the opportunity to participate in a covered program." *Davis*, 442 U.S. at 412, 99 S.Ct. at 2370. Put another way, a program may not be defined in a way that effectively denies meaningful access to an otherwise qualified handicapped person. *Choate*, 469 U.S. at 301, 105 S.Ct. at 720. To ensure this principle is respected, where it appears that a handicapped person satis-

10. There is no dispute that plaintiff is qualified, within the meaning of the statute, to participate in the defendants' public school program. See *Southeastern Community College v. Davis*, 442 U.S. at 406, 99 S.Ct. at 2367 ("otherwise qualified individual" is one who is able to meet all of the program's requirements in spite of his or her handicap). Indeed, under EHA, defendants are required to create an individualized educational program that enables plaintiff to participate. Moreover, she has successfully attended Hogan High School for two years.

fies a federally funded program's basic requirements, section 504 requires the court to determine whether any "reasonable accommodations" can be made by the grantee to facilitate the handicapped person's participation. *Arline*, 480 U.S. at 288 n. 17, 107 S.Ct. at 1131 n. 17. As noted above, a defendant's refusal to modify an existing program to eliminate non-essential requirements that would prevent a handicapped person from participation must be condemned as "unreasonable and discriminatory." *Davis*, 442 U.S. at 413, 99 S.Ct. at 2370. On the other hand, an accommodation is not reasonable "if it either imposes an undue financial or administrative burden on the grantee, or requires a fundamental alteration in the nature of the program." *Id.*, at 412, 99 S.Ct. at 2370.

In California, the scope of the duty of reasonable accommodation is, at the minimum, defined by the provisions of state law which require the defendant school district to grant access to plaintiff's service dog. As I noted above, California Civil Code § 54.1 mandates that "physically disabled persons shall be entitled to full and equal access, as other members of the general public ... to places to which the general public is invited." The equal access mandate of section 54.1 is implemented, in part, by California Civil Code § 54.2, which requires that "[e]very ... physically handicapped person *shall* have the right to be accompanied by a guide dog, signal dog, or service dog, especially trained for that purpose, in any of the places specified in Section 54.1" (emphasis supplied). The only limitations which may be imposed on this broad right are "those established by law, or state or federal regulation, and applicable alike to all persons." Cal.Civ.Code § 54.1(a). The mandatory language employed indicates a clear legislative purpose to ensure that persons such as plaintiff shall not be denied access to public facilities while accompanied by their service dogs.[11] Through these provisions, the California Legislature has determined that in the absence of legal authority to the contrary, there are no circumstances in which it would be reasonable to exclude a service dog from a public facility. *See* Cal.Civ. Code § 54.1. For purposes of applying section 504 to entities which are also covered by California Civil Code §§ 54.1 and 54.2, such as the defendant school district, service, signal and guide dogs are presumptively entitled to access. Thus, in a case such as the one at bar, a facility covered by Civil Code §§ 54.1 and 54.2 may not claim that it cannot reasonably accommodate a disabled person's choice to use a service, guide or signal dog under section 504 on grounds that to do so would impose an undue administrative or financial burden on the institution.

For the reasons I have explained above, California Civil Code §§ 54.1 and 54.2 apply to public schools, and plaintiff is entitled to their protection. Plaintiff uses the service dog to overcome the physical limitations resulting from her cerebral palsy. The service dog is specially trained to assist plaintiff in achieving greater physical independence. The evidence shows that the dog received two years of training from Canine Companions before being matched with plaintiff and performs tasks that she cannot perform herself. Bergin Declaration at 2–3; Christine Sullivan Declaration at 2; Michelle Sullivan Declaration at 2. It is therefore clear that plaintiff has a near absolute right under state law to be accompanied by her service dog at school.

11. Defendants' argument that California Civil Code § 54.2 has no application where the handicapped person does not require the services of the dog to attain access to a public facility cannot be countenanced. Defendants readily concede that there is a strong state policy in California, evidenced by numerous legislative enactments, to integrate disabled individuals into society on a full and equal basis. *See, e.g.*, Cal.Civ.Code §§ 51, 54.1, 54.2, 55; Cal.Penal Code § 365.5. These provisions would have no meaning were they construed to permit a public facility to substitute its own judgment as to whether a disabled person requires the assistance of an auxiliary aid, whether it be a service dog or a wheelchair, to gain access to its premises. Under this theory, a public facility could ban wheelchairs from its premises as long as it provided attendants to carry mobility impaired persons from place to place. The guarantees embodied in both California Civil Code § 54.1 and the anti-discrimination mandate of section 504 must mean more than this.

Defendants seek to justify the exclusion of plaintiff's service dog on two grounds. First, that the dog is unnecessary, and second, on space and health concerns. Neither justification is persuasive. Defendants' assertion that plaintiff does not need the service dog at school, and thus cannot benefit from the statutory scheme must be rejected in view of their admission that due to plaintiff's physical limitations she must rely on others to perform various physical tasks that she cannot perform herself. They further concede that such tasks include those which may be performed by a service dog, such as retrieving dropped items. They insist, however, that these circumstances are of no real concern because plaintiff needs to have those tasks performed infrequently. Joseph Declaration at 3, para. 8; Murphy Declaration at 3, para. 6. Defendants' argument not only demonstrates a lack of sensitivity to the special needs of physically disabled people, it also appears to be contradicted by their own affidavits, and finally, may well be irrelevant to her section 504 claim.

Plaintiff's physical mobility is severely restricted as a result of cerebral palsy. As she has eloquently described in her affidavit, to live a life dependent on others to perform simple physical tasks is painful and difficult. By using a service dog who she controls to perform these tasks, plaintiff is able to exercise greater control over her environment and achieve greater independence in all aspects of her life. By denying access to plaintiff's service dog, defendants have greatly diminished the dog's usefulness to plaintiff and, thereby, have deprived her of her independence. *See* Christine Sullivan Declaration at 4; Michelle Sullivan Declaration at 5.

The protection created by California Civil Code §§ 54.1 and 54.2 would be seriously undermined were defendants able to deny plaintiff's right to use the service dog outside of school by prohibiting her from being accompanied by the service dog in school. Thus, whether or not plaintiff requires the services of the dog to perform particular tasks for her during the school day is simply not dispositive.

Defendants' decision to exclude the service dog from their premises is predicated on asserted space and health concerns, as well as their own views about plaintiff's social and emotional development. *See* Declaration of Pennee Hughes at 7, para. 16(a)–(f). The California Legislature, however, has determined that concerns of this character may not override the right of a disabled person who uses a service dog to have full and equal access to public facilities accompanied by his or her dog. As a result, the reasons articulated by defendants for excluding plaintiff's service dog from their premises do not satisfy the defendants' burden of demonstrating that reasonable accommodations are "neither practicable nor possible" for purposes of section 504 of the Rehabilitation Act of 1973. *See Sisson v. Helms,* 751 F.2d at 993.

Defendants' corollary decision to create an Individualized Educational Program ("IEP") for plaintiff that likely precludes her ability to be accompanied by her service dog also violates section 504. To repeat, plaintiff is a person who uses a service dog as a matter of right under state law. Under section 504 of the Rehabilitation Act of 1973, defendants are therefore required to develop an IEP which incorporates plaintiff's choice to use a service dog. By placing plaintiff in a classroom taught by a person known to have severe allergies to animal dander, defendants have failed in their obligation to ensure that plaintiff will have meaningful access to their educational program. *Choate,* 469 U.S. at 301, 105 S.Ct. at 720. This conduct can only be characterized as "unreasonable and discriminatory." *Davis,* 442 U.S. at 413, 99 S.Ct. at 2370. Under these circumstances, I must conclude that plaintiff has demonstrated a clear probability of success on the merits of her federal handicap discrimination claim.

### 2. *California Civil Code Sections 54.1 and 54.2*

For the reasons discussed above, plaintiff has also succeeded in demonstrating a clear probability of success on her state

law claim predicated on California Civil Code §§ 54.1 and 54.2.

## C. *Irreparable Injury/Balance of Hardships*

Plaintiff has also shown that she will likely suffer grave and irreparable injury if a preliminary injunction does not issue. Her declarations amply demonstrate that each day she is forced to be separated from her service dog in school, his usefulness to her is diminished. Christine Sullivan Declaration at 4, paras. 14, 15; Michelle Sullivan Declaration at 5, paras. 15, 18 and 19. As a consequence of defendants' conduct, plaintiff's ability to function as an independent person, according to her own self-definition, both in and out of school is injured daily. Neither an award of damages nor a permanent injunction following the conclusion of this litigation could possibly restore to plaintiff the loss of independence she is likely to suffer in the interim as a result of defendants' conduct.

Moreover, the balance of hardships tips strongly in plaintiff's favor. The defendant school district has shown only that it will suffer the apparently minor inconvenience of having to restructure plaintiff's educational program in order to accommodate her service dog. In view of its legal obligation to do so, however, this type of inconvenience cannot outweigh the injury suffered by plaintiff to both her working relationship with her dog and her dignity and self-respect. Defendants' additional argument that they have an interest in the quality of plaintiff's educational program that would be injured by the requested injunction is, at best, disingenuous. As her papers reflect, plaintiff is fully aware that, due to her teacher's animal dander allergies, her placement will likely have to be changed as a result of her choice to use her service dog in school. Given the limited nature of the special education program at

Hogan, it may even be that the quality of her educational program will be diminished. It would appear, however, that plaintiff and her parents have determined that the benefits to be gained from plaintiff's use of the service dog in all aspects of her life outweigh any negative effects on the quality of her formal education. This is a choice that belongs solely to plaintiff and her parents, and not the defendant school district.

For these reasons, I conclude that plaintiff has satisfied the requirements for preliminary relief and an order enjoining defendants from preventing plaintiff from bringing her service dog to school.

## D. *Remedy*

Having determined that plaintiff is entitled to a preliminary injunction, I must now decide the appropriate scope of the remedial decree.

Although the state law guarantee of equal protection prevents defendants from excluding the service dog from their premises, the space and health concerns which defendants contend motivated their initial decision remain relevant in determining the appropriate manner of incorporating the service dog into the school environment.[12] Although I have held that plaintiff is entitled to be accompanied by her service dog at school, it would be entirely reasonable for defendants to take steps to ensure that plaintiff's choice is accommodated in a manner that does not injure the legitimate and legally protectable rights of others. Thus, as plaintiff concedes, her placement will likely have to be changed once the service dog is incorporated into her school program due to the allergies of her primary teacher. On the other hand, it is important to note that defendants are required to place plaintiff in the least restrictive environment possible, given the choices she has made. *Martinez*, 861 F.2d at 1506. Accordingly, defendants may not alter

---

**12.** Of principle concern is the suggestion that plaintiff's primary teacher is severely allergic to animal dander. I emphasize here, however, that defendants' belief that the service dog would impede plaintiff's social and emotional development, which is expressed throughout the defendants' declarations, may play no role in

the decision as to how best to incorporate the service dog into plaintiff's educational program. As I explain at length in the text, section 504 compels defendants to respect plaintiff's choice about how best to overcome the limitation created by her physical disability.

plaintiff's placement to accommodate the purely personal feelings of others, either students or faculty, about dogs in the school environment. Conduct of this character would clearly contravene the purpose of section 504 "to protect ... handicapped persons from deprivations based on prejudice, stereotypes and unfounded fear." *Arline*, 480 U.S. at 287, 107 S.Ct. at 1131.

On the record before me, I cannot determine whether defendants may be able to accommodate plaintiff and her service dog by simply altering plaintiff's placement in a manner consistent with the objectives outlined in her current IEP, or whether more fundamental changes are required. Although it may be that plaintiff can no longer remain in Ms. Murphy's physically handicapped classroom, defendants' declarations suggest that there may be another class which would meet the educational objectives outlined in plaintiff's current IEP. *See* Declaration of Pennee Hughes at 8, para. 16(e). On the other hand, it may be that due to the limited nature of the special education program at Hogan High School, a new IEP will have to be created. For example, although it appears that Hogan High School is the only campus in the Vallejo Unified School District that is fully wheelchair accessible, Declaration of Pennee Hughes at 8 para. 16(e), there may be another partially accessible campus which offers special education classes that are appropriate for plaintiff's educational needs. In the final analysis, once plaintiff's right to be accompanied by her service dog is accepted as a given, decisions regarding an appropriate placement are educational decisions which are properly the subject of the EHA procedures described at Section I(B)(2) above.

For these reasons, I must defer the decision as to plaintiff's proper placement to the established administrative procedures mandated by the Education of the Handicapped Act, 20 U.S.C. § 1400.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Defendants and their employees, agents, or any and all other persons acting on defendants' behalf or under defendants' control are hereby RESTRAINED from interfering in any way with plaintiff's right to be accompanied by her service dog while attending public school.

2. Defendants shall convene a new IEP within seven (7) days of the effective date of this order for the purpose of modifying plaintiff's existing educational program, or creating a new IEP which ensures that plaintiff's right to be accompanied by her service dog in all aspects of her educational program is not impaired.

3. The modified or new IEP shall be in place so that plaintiff may be accompanied by her service dog no later than twenty (20) days thereafter. The parties shall submit a status report to the court at that time demonstrating that this order has been complied with.

IT IS SO ORDERED.