**ADOBE LUMBER, INC., a California corporation, Plaintiff,**

v.

**F. Warren HELLMAN and Wells Fargo Bank, N.A., as Trustees of Trust A created by the Estate of Marco Hellman, F. Warren Hellman as Trustee of Trust B created by the Estate of Marco Hellman, The Estate of Marco Hellman, deceased, Woodland Shopping Center, a limited partnership, Joseph Montalvo, Harold Taecker, Geraldine Taecker, Hoyt Corporation, a Massachusetts corporation; PPG Industries, Inc., a Pennsylvania corporation, Occidental Chemical Corporation, a New York corporation, and City of Woodland, Defendants.**

**No. CIV.S 05 1510 WBS PA.**

United States District Court,
E.D. California.

Jan. 4, 2006.

Howard L. Pearlman, Robert L. Wainess, Bartko, Zankel, Tarrant & Miller, San Francisco, CA, for Plaintiff.

Thomas M. Donnelly, Ryan Reside Tacorda, Heller Ehrman White & McAuliffe, Peter C. Labrador, Leach McGreevy and Labrado LLP, Gary J. Smith, Beveridge and Diamond PC, R. Morgan Gilhuly, Donald Evan Sobelman, Barg Coffin Lewis & Trapp LLP, San Francisco, CA, Merswind C. Reyer, Steven H. Goldberg, Downey Brand LLP, Robert M. Shannon, Lewis,

Breisbois, Bisgaard & Smith, J. Scott Smith, Angelo, Kilday & Kilduff, Daniel Mark Fuchs, Best Best and Krieger LLP, Sacramento, CA, Brian H. Phinney, Kim J. Sveska, Richard S. Baron, Foley Baron & Metzger, PLLC, Farmington Hills, MI, for Defendants.

## MEMORANDUM AND ORDER RE: MOTION TO DISMISS

SHUBB, District Judge.

Based on contamination discovered on its commercial property, plaintiff Adobe Lumber, Inc. filed suit against defendants, alleging violations of the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6992k ("RCRA"), the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601–9675 ("CERCLA"), and California state law. Defendants, in various groupings, move to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. Factual and Procedural Background

Plaintiff purchased the Woodland Shopping Center ("the Center") located at 120 Main St., Woodland, Ca, in 1998. (First Am. Compl. ¶¶ 3, 22.) At that time, defendants Harold and Geraldine Taecker operated a dry cleaning business in Suite K, a location they began leasing for that purpose in 1974. (Id. ¶¶ 4, 19.) Plaintiff continued to lease this space to the Taeckers through October 2001. (Id. ¶ 22.)

From 1974 until plaintiff's purchase in 1998, various parties, including the trustees of the trusts created by the Estate of Marco Hellman, the estate itself, the Woodland Shopping Center ("WSC") partnership, and Joseph Montalvo, all named defendants in this action, had ownership interests in the Center. (Id. ¶¶ 5–9, 22.) Defendant Hoyt Corporation manufac-

tured the equipment used in the dry cleaning business and defendants PPG Industries and Occidental Chemical Corporation allegedly manufactured the solvent perchloroethylene ("PCE") used in Hoyt's machines. (*Id.* ¶¶ 10–12.) Based on these relationships with the Taeckers' dry cleaning business, plaintiff seeks to hold these defendants liable for the environmental damage described *infra*.

Around August 2001, plaintiff conducted a "limited surface investigation ... to assess whether activities from the Taeckers' dry cleaning operation had impacted subsurface soil and/or groundwater beneath the Site." (*Id.* ¶ 35.) The investigation revealed the presence of contamination, which plaintiff reported to the California Regional Water Quality Control Board. Both plaintiff and the Regional Board subsequently demanded that the Taeckers begin to take steps to remediate the contamination, but the Taeckers failed to respond to these requests. (*Id.* ¶¶ 36–38.) Plaintiff thereafter filed suit against the Taeckers on January 22, 2002, "seeking to recover costs incurred in response to the contamination ... under both section 107(a) and section 113(f)(1) of CERCLA as well as declaratory relief as to liability for future cleanup costs pursuant to section 113[ (g) ](2) of CERCLA." (Pl.'s Opp'n to Def. Owners' Mot. to Dismiss 4.)

In the course of the 2002 litigation, plaintiffs discovered that the Taeckers' business used PCE, a substance hazardous to human health but commonly used as a dry cleaning solvent. (First Am. Compl. ¶¶ 23, 26(a)-(b).) Significantly, plaintiffs learned that "several sudden and accidental discharges of PCE to the environment occurred" "during the course of the Taeckers' dry cleaning operations ...." (*Id.* ¶ 30.) Plaintiffs also learned, in 2004, that the design of Hoyt's machinery and instructions from both Hoyt and the chemical manufacturers led to intentional discharges of PCE into the ground and public sewers. (*Id.* ¶ 29.)

The previous action against the Taeckers spawned a flurry of cross and third party complaints involving many of the defendants in the instant case. (Pl.'s Opp'n to Def. Owners' Mot. to Dismiss 4.) Eventually, the parties not dismissed by Judge Burrell stipulated to dismissing their claims against each other without prejudice and the court closed the case pursuant to Federal Rule of Civil Procedure 41(a). *Adobe Lumber Inc v. Taecker,* No. CIV-S-02-186 (E.D.Cal. Aug. 1, 2005). Prior to that order, however, plaintiff filed the instant motion on July 27, 2005, reinstating some of the claims from the earlier action.

In this current round of litigation, plaintiff seeks a clean up order against the Taeckers under RCRA, 42 U.S.C. § 6927(a) (First Claim), contribution under CERCLA section 107(a) against all defendants (Second Claim), declaratory relief against all defendants under CERCLA section 113(g)(2) (Third Claim), contribution and declaratory relief against all defendants under California Hazardous Substances Account Act ("HSAA"), Cal. Health & Safety Code §§ 25300–25395, (Fourth & Fifth Claims), damages and injunctive relief for continuing public and private nuisance and for trespass against all defendants except the city (Sixth, Seventh, & Eighth Claims), and strict product liability, negligence, and negligence per se against the manufacturer defendants (Ninth, Tenth, & Eleventh Claims). (First Am. Compl.; Pl.'s Opp'n to Def. Owners' Mot. to Dismiss 5–6.) On October 24, 2005, the trustees, the WSC partnership, and Montalvo filed a Rule 12(b)(6) motion to dismiss, which defendants City of Woodward, Hoyt, Occidental, and PPG all join. Occidental and PPG together and Hoyt individually also filed separate motions to

dismiss on additional grounds. These motions to dismiss are now all before the court.

## II. *Discussion*

### A. *Legal Standard*

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The court may not dismiss for failure to state a claim unless it appears beyond a doubt that the pleader can prove no set of facts in support of the claim which would entitle him or her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In other words, dismissal is appropriate where the pleader fails to allege facts that support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988).

In general, the court may not consider material other than the facts alleged in the complaint when deciding a motion to dismiss. *Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir.1996) ("A motion to dismiss ... must be treated as a motion for summary judgment ... if either party ... submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials."). However, reliance on matters of public record "does not convert a Rule 12(b)(6) motion to one for summary judgment." *Mack v. S. Bay Beer Distribs.,* 798 F.2d 1279, 1282 (9th Cir.1986), *abrogated on other grounds by Astoria Fed. Sav. &*

*Loan Ass'n v. Solimino,* 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

### B. *Motion to Dismiss for Failure to State a Claim under CERCLA section 107(a)*

■ In the motion filed by the trustees, the WSC partnership, and Montalvo, in which all other defendants join, defendants argue that plaintiff, who voluntarily assumed initial investigatory costs in furtherance of an environmental clean up, cannot sue other potentially responsible parties ("PRPs") for contribution under CERCLA in light of the Supreme Court's decision in *Cooper Industries, Inc. v. Aviall Services, Inc.,* 543 U.S. 157, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004). In the absence of a valid claim for contribution under CERCLA, defendants ask the court to dismiss Claim Three (seeking declaratory relief under CERCLA section 113(g)(2)),[1] and to refuse to exercise supplemental jurisdiction over the remaining state law claims.

Prior to the Supreme Court's decision in *Aviall,* a PRP like plaintiff, who voluntarily incurred clean up costs to remediate environmental contamination, could unquestionably seek contribution from other PRPs. *See Pinal Creek Group v. Newmont Mining Corp.,* 118 F.3d 1298 (9th Cir. 1997); *W. Props. Serv. Corp. v. Shell Oil Co.,* 358 F.3d 678, 685, 689–90 (9th Cir. 2004) (explaining *Pinal Creek*). In *Pinal Creek,* the Ninth Circuit explained that such a right was evident from the historic implicit right to contribution in section 107, the "contours and mechanics" of which are governed by section 113 (which addresses how to apportion liability among PRPs). 118 F.3d at 1301–02; *W. Props.,* 358 F.3d

---

1. CERCLA section 113(g)(2) only authorizes declaratory relief in a section 107 cost recovery action, which, as the discussion below explains, is distinguishable from a suit for contribution. However, despite the lack of textual support, the Ninth Circuit has held

that declaratory relief allocating future costs in contribution actions is appropriate. *Boeing Co. v. Cascade Corp.,* 207 F.3d 1177, 1191 (9th Cir.2000). Nothing in the statute prohibits such relief and it is "consistent with the broader purposes of CERCLA." *Id.*

at 685 ("*Pinal Creek* held that the enactment of § 113 in 1986 did not replace the implicit right to contribution many courts had recognized in § 107(a)."). In so holding, the Ninth Circuit effectively created "a hybrid action under sections 107(a)(4)(B) and 113(f), with the former provision creating the implied right of contribution, and the latter qualifying the nature of that claim." Craig N. Johnston, *Current Landowner Liability Under CERCLA: Restoring the Need for Due Diligence,* Fordham Envtl. L.J. 401, 467 n. 246 (1998). Accordingly, voluntarily incurred clean up costs were partially recoverable in an action that asserted "*both* a § 107(a) response-cost recovery and a § 113(f)(1) contribution claim ...." *W. Props.,* 358 F.3d at 685 (emphasis added).

However, in *Aviall,* the Supreme Court held that a PRP cannot seek clean up cost contributions from other PRPs under CERCLA section 113(f)(1) for *voluntarily* incurred clean up costs. To assert a section 113(f) claim, a PRP must first be *compelled* to incur clean up expenses through a suit for response costs under section 106 or 107(a). *Id.* at 584. The Court pulled this requirement straight from the statute's text, which allows "[a]ny person [to] seek contribution from any other person who is liable or potentially liable under section [107](a) of this title, during or following any civil action under section [106] of this title or under section [107](a) of this title." 42 U.S.C. § 9613.

Plaintiff in this case, as the current owner of the Center, is a PRP who has not yet been sued for response costs under section 106 or 107, and would thus appear to be unable to bring a section 113(f) contribution claim against other PRPs in light of *Aviall.* (Pl.'s Opp'n to Def. Owners' Mot. to Dismiss 8) ("Adobe ... does not dispute that by virtue of its status as the current owner of the Center, it is also a PRP"); *see also* 42 U.S.C. § 9607(a)(1) (defining "the owner and operator of a vessel or a facility" as a "covered person" under CERCLA).

*Aviall* did not, however, foreclose the possibility that voluntary cleaners who are also PRPs can still sue for contribution, despite their inability to meet the procedural requirements of a section 113(f)(1) contribution action. The Court remained open to the possibility that PRPs may "pursue a section 107(a) [cost recovery] action against other PRPs for joint and several liability."[2] *Aviall,* 125 S.Ct. at 585. It also left open the possibility that a PRP "may pursue a § 107 cost recovery action for some form of liability other than joint and several." *Id.* at 585. Finally, the Court professed to have left undecided "whether any judicially implied right of contribution survived the passage of [the Superfund Amendments and Reauthorization Act of 1986 ("SARA") ]." *Id.* at 586. *But see id.* at 582 n. 3 (noting that the right to cost recovery in certain circumstances under 107(a) is "clearly distinct" from the right to contribution under section 113(f)); *id.* at 583 ("There is no reason why Congress would bother to specify conditions under which a person may bring a

---

2. "Contribution" is specifically addressed in section 113, which provides for an equitable allocation of responsibility between PRPs. "Cost recovery" is addressed in section 107, which permits the government or a private party who has incurred response costs to hold a PRP jointly and severally liable for those costs (meaning 100% liable, regardless of the particular PRP's contribution). *Fireman's Fund Ins. Co. v. City of Lodi,* 302 F.3d 928,

945–46 (9th Cir.2002). Some courts, including the Ninth Circuit, have denied PRPs the right to sue each other for cost recovery, because liability among PRPs is "several-only," not joint and several. *Pinal Creek,* 118 F.3d at 1303. Thus, "a PRP is not entitled to recover all its response costs from other PRPs, but instead is limited to asserting a claim for contribution." *Id.* at 1302.

contribution claim, and at the same time allow contribution actions absent those conditions.").[3] This court must therefore consider how the Ninth Circuit has resolved, or will resolve, these questions that the Supreme Court did not.

Applying any one of the theories left open by the Supreme Court, in this case, is problematic because the Ninth Circuit's pre-*Aviall* precedents assumed a cost recovery suit was not a prerequisite for a § 113(f) contribution action. *See Pinal Creek,* 118 F.3d at 1301–02; *W. Props.,* 358 F.3d at 685. Furthermore, the prior Ninth Circuit case law established that a claim under § 113(f) is a necessary component of the voluntary cleaner's cause of action. *W. Props.,* 358 F.3d at 685. The cases stressed that a PRP cannot assert a naked section 107(a) claim against other PRPs because such claims are for joint and several liability and a PRP's liability is "several-only." *Pinal Creek,* 118 F.3d at 1303, 1306; *id.* at 1302 (opining that "a PRP is not entitled to recover all its response costs from other PRPs" because, by definition, a PRP is partially responsible for some of the costs); *id.* at 1303 ("[A] CERCLA claim by a PRP against another PRP is necessarily for contribution.").

Evidently then, the first question left open in *Aviall,* whether PRPs have a cost recovery claim for joint and several liability, has already been answered in the nega-

tive by the Ninth Circuit in *Pinal Creek.* Likewise, the second question, whether PRPs may pursue a section 107 *cost recovery* action for some form of liability other than joint and several, also appears to be decided in this circuit. *Pinal Creek* held that a PRP does not have a *cost recovery action* and instead has only a *contribution action,* implicitly provided by section 107 and regulated by the terms of section 113. 118 F.3d at 1305 n. 7.

Moreover, the Ninth Circuit has stated more than once that the language and structure of CERCLA create an action for cost recovery based only on joint and several liability. *W. Props.,* 358 F.3d at 690 (refusing to read into the section 107 cost recovery action, against its language, authority to allocate liability proportionally); *Fireman's Fund Ins. Co. v. City of Lodi,* 302 F.3d 928, 945 (9th Cir.2002) (recognizing, in dicta, that in a section 107 action for cost recovery, "liability *is* joint and several" (emphasis added)); *State v. Montrose Chemical Corp. of Cal.,* 104 F.3d 1507, 1518 n. 9 (9th Cir.1997) (same). *But see Price v. U.S. Navy,* 39 F.3d 1011, 1018 (9th Cir.1994) (affirming the imposition of proportionate liability, without discussing the relationship between sections 107 and 113, because "CERCLA *does not mandate* the imposition of joint and several liability" and simply allows for "it in cases of indivisible harm").[4]

---

**3.** At the very least, the Court cast serious doubt on the future application of the pre-SARA implied right to contribution under section 107. The Court noted that since its inception, the right, recognized under the auspices of federal common law, "was debatable in light of two decisions ... that refused to recognize implied or common-law rights to contribution in other federal statutes." *Aviall,* 125 S.Ct. at 581 (citing *Tex. Indus., Inc., v. Radcliff Materials, Inc.,* 451 U.S. 630, 638–47, 101 S.Ct. 2061, 68 L.Ed.2d 500(1981); *Nw. Airlines, Inc. v. Transp. Workers,* 451 U.S. 77, 90–99, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981)); *see also Kotrous v. Goss–Jewett Co.,*

No. CIV.S–02–1520, 2005 WL 2452606, at *3 (E.D.Cal. Oct. 4, 2005) ("The Court [in *Aviall*] ... express[ed] considerable skepticism regarding whether courts should find ... an implied right [to contribution].").

**4.** As one author has noted, joint and several liability under CERCLA is a creation of the courts. Language explicitly providing joint and several liability was actually removed from the final version of the bill. Lynda J. Oswald, *New Directions in Joint and Several Liability Under CERCLA?,* 28 U.C. Davis L.Rev. 299, 323 (1995). Consequently,

Although some wiggle room may remain, Ninth Circuit case law does not seem to be amenable to plaintiff's argument that partial indemnity is achievable in a section 107 cost recovery action. *W. Props.*, 358 F.3d at 690 ("A non-innocent landowner cannot recover its costs jointly and severally from the polluters, *nor can it recover them through indemnity*, as distinct from contribution." (emphasis added)). *But see Adobe Lumber, Inc. v. Taecker*, No. CIV. S–02–186, 2005 WL 1367065, at *6 (E.D.Cal. May 24, 2005) (reading *Pinal Creek* to recognize that such a right existed prior to SARA).

Questions also remain as to whether PRPs in the Ninth Circuit can travel the third avenue for relief left open in *Aviall*. Did the implicit right of contribution, as construed by the Ninth Circuit, survive SARA completely intact? *Pinal Creek* does not so hold, for that decision addressed how SARA *modified* the historical right of contribution by introducing the machinery to govern, regulate, and qualify contribution claims. 118 F.3d at 1302. The opinion did not establish that an independent implied right to contribution still exists, and instead held that a PRP's right

to claim contribution from other PRPs is controlled by the "joint operation" of sections 107 and 113. *W. Props.*, 358 F.3d at 685; *see also Pinal Creek*, 118 F.3d at 1304 (citing with approval other circuit court decisions that "reject[ed] the argument that the PRP's claim was governed exclusively by § 107"); *City of Rialto v. U.S. Dep't of Defense*, Nos. CV 04–0079, CV 04–00759, 2005 U.S. Dist. LEXIS 26941, at *16 (C.D.Cal. Aug. 16, 2005) (noting that in the Ninth Circuit, "the implicit right to contribution in 107(a) is not a cause of action which exists independently of § 113(f)"). As a result, the implied right of contribution in the Ninth Circuit does not appear to have completely survived SARA. Rather, SARA changed and qualified the right by providing "details . . . that were missing from the text of § 107." *Pinal Creek*, 118 F.3d at 1301.

In light of *Aviall's* determination that a PRP necessarily fails to meet the qualifications of section 113(f) if it has not first been sued under sections 106 or 107, plaintiff here cannot bring suit pursuant to the implied right of contribution recognized in *Pinal Creek*.[5] That right has been coupled with the requirements of section 113(f),

CERCLA was enacted with no express statutory provision for joint and several liability, although its legislative history revealed a strong commitment to such a standard on the part of the legislation's sponsors (and an equally strong rejection of the concept on the part of the legislation's opponents). Faced with this backdrop of congressional discordance and statutory silence, the courts did indeed create a federal common law of joint and several liability under CERCLA . . . . Overall, Congress seemed satisfied with early judicial efforts in this area. When CERCLA was amended in 1986 by the Superfund Amendment and Reauthorization Act (SARA), Congress declined to alter the joint and several liability standard that had evolved over the previous six years.

*Id.* at 323–24.

Therefore, although the text of the statute could be read, as the Supreme Court observed, to support "a § 107 cost recovery

action for some form of liability other than joint and several", the Ninth Circuit's repeated statements that liability under section 107 *is* joint and several counsel against a decision by this court that some other form of liability presently exists.

5. The Ninth Circuit's decision in *Western Properties* failed to preserve *Pinal Creek 's* construction of a section 107(a) right of contribution. Released while the Supreme Court was still mulling over its decision in *Aviall*, *Western Properties* sought to head off any change in the *Pinal Creek* approach that the result in *Aviall* might require. These efforts were in vain. First, the Ninth Circuit's assumption in *Western Properties* that "a § 106 action or a § 107(a) action is not a necessary condition for bringing a § 113 action" was expressly rejected in *Aviall*. Compare *W. Props.*, 358 F.3d at 685, *with Aviall*, 125 S.Ct. at 584. Likewise, its assertion that a section 107(a) response cost recovery claim filed contempo-

which under *Aviall,* plaintiff has not satisfied. *See id.* at 1306 ("[A] claim asserted by a PRP under § 107 *requires* application of § 113 ...." (emphasis added)). Until the Ninth Circuit cuts the implied right to contribution under section 107(a) loose from the moorings of section 113(f),[6] PRPs in this circuit, like plaintiff here, who have voluntarily incurred clean up costs, will want for a clear right to seek contribution from other PRPs.[7]

Thus, defendants have made a compelling argument that the Ninth Circuit's prior decisions now frustrate a PRP's ability to seek relief based on a theory left open in *Aviall.* The undersigned fails to find support for granting a PRP the right to sue for partial indemnity under the provisions of section 107 alone, given that the Ninth Circuit has previously declined invitations to do the same. *See W. Props.,* 358

F.3d at 690. Nor can the undersigned see how a PRP's right of contribution for voluntarily incurred costs in the Ninth Circuit, forged from sections 107(a) *and* 113(f), could have survived *Aviall,* which took away a necessary component of the circuit's recognized cause of action. The combination of *Aviall* and *Pinal Creek/Western Properties* has muddied an issue that was once clear. *See Kotrous,* 2005 WL 2452606, at *4 (granting a motion for certification for interlocutory appeal and to stay the proceedings because a PRP's rights after *Aviall* are uncertain).

Nevertheless, despite the obstacles identified here, the court has difficulty imagining that the Ninth Circuit would prevent PRPs from pursuing contribution claims for clean up costs incurred voluntarily. This circuit has for some time recognized such a right and the Supreme Court left

---

raneously with a section 113(f)(1) contribution claim could serve as the "civil action ... under section [107](a)," as required by section 113(f)(1), was also implicitly rejected in *Aviall.* The Supreme Court there observed that to assert a contribution claim under § 113(f), a party must have *"been subject to"* an action under sections 106 or 107(a). *Id.* at 584 (emphasis added). A PRP's own simultaneous action for cost recovery does not satisfy the requirements of section 113(f) and the rule of *Pinal Creek* cannot get around this requirement.

6. Indeed, the Ninth Circuit may do just that. In *Pinal Creek,* the court rejected as simply wrong plaintiff's argument that, as a voluntary cleaner, it would "not be entitled to assert a contribution claim under § 113(f) ... because it ha[d] not incurred any liability which would trigger such an action." *Pinal Creek,* 118 F.3d at 1305. In retrospect and in light of *Aviall,* the *Pinal Creek* plaintiff's fears were actually legitimate.

Alternatively, of course, Congress could change the language of section 113 and expand the contribution right to parties who voluntarily assume clean up responsibilities. Or, as recognized above, the court could re-

cant its prior statements that liability under section 107 is joint and several.

7. The potential for this approach to "hamper ... voluntary environmental responses by private parties to the threat posed by hazardous waste sites" is, regrettably, of no moment. *Id.* at 1304. Although CERCLA aimed to "induce [liable] persons voluntarily to pursue appropriate environmental response actions," the court cannot entertain policy considerations when it is otherwise constrained by "the controlling text, structure, and logic of CERCLA and ... precedent ...." H.R.Rep. No. 96–1016(I), at 17 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6119, 6120; *Pinal Creek,* 118 F.3d at 1304. Moreover, other incentives, such as a desire to protect on-going operations, to control clean up costs, or to avoid unrecoverable legal fees associated with a contribution action, may still motivate PRPs to conduct voluntary clean ups. *See Pinal Creek,* 118 F.3d at 1305; *see also Key Tronic Corp. v. United States,* 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994) (holding that "§ 107 does not provide for the award of private litigants' attorney's fees"). Therefore, the court's conclusion that, in light of *Aviall,* Ninth Circuit law no longer clearly supports a contribution right for PRPs, does not necessarily undermine CERCLA's intentions.

open several possible avenues for continuing the practice. Thus, one might reasonably expect that the Ninth Circuit will find a way to reconcile one of the Court's proposed approaches with its existing case law. Additionally, other judges in this district have held, post-*Aviall*, that PRPs who clean up voluntarily still have a contribution action. *See, e.g., Kotrous v. Goss–Jewett Co.*, No. CIV. S–02–1520, 2005 WL 1417152, at *3 (E.D.Cal. June 16, 2005) ("[U]nder controlling Ninth Circuit precedent, a PRP may maintain a claim for contribution under § 107(a)."); *Kotrous*, 2005 WL 2452606, at *1 (explaining further that the June 16, 2005 order concluded that the "implied right of contribution in CERCLA section 107(a) [is] independent of section 113(f)"); *Adobe Lumber*, 2005 WL 1367065, at *6 (concluding that, in the wake of *Aviall*, a " § 107 claim is construed as it was before the congressional enactment of § 113").

It therefore seems prudent at this juncture, in the interest of providing litigants in this district with certainty, to continue to recognize plaintiff's cause of action under CERCLA.[8] Consequently, the court is disinclined to dismiss plaintiff's claim for contribution at this time. A definitive statement on this matter is likely forthcoming, as several of the post-*Aviall* cases cited above have already reached the Ninth Circuit on appeal. *See City of Rialto v. U.S. Dep't of Defense*, No. 05–56749

(9th Cir. filed Nov. 5, 2005) (scheduled to be fully briefed in April, 2006); *Kotrous v. Gross–Jewett Co.*, No. 05–80120 (9th Cir. filed Oct. 21, 2005). Thus, pending resolution by the Ninth Circuit of the question presented here, this court thinks it best to stay any discovery in this case. "Because the issue before the Ninth Circuit may be dispositive of plaintiff's federal claims, a stay ... at this point will promote economy of time and effort for both the parties and the court." *Kotrous*, 2005 WL 2452606, at *5; *see also CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.1962) ("A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants.").

C. *Motion to Dismiss Claims Nine, Ten, and Eleven as Time Barred*

■ Defendants Occidental and PPG, joined by Hoyt, ("the manufacturer defendants") separately move to dismiss the Ninth, Tenth, and Eleventh Claims for strict products liability, negligence, and negligence per se. These claims are brought only against these three defendants and are opposed as being untimely. The parties agree that California Code of Civil Procedure § 338(b), which provides a three year statute of limitations, controls these claims and that the California delayed discovery rule governs when the limitations period commenced.[9] (Pl.'s Opp'n

---

8. The law applied in a particular case should not wholly depend on which judge was randomly-selected to hear it. This principle especially holds true in this case, where plaintiff has already successfully defended against the exact legal argument made here in another action based on these same facts. *Adobe Lumber*, 2005 WL 1367065 at *4.

9. CERCLA's § 9658 governs the commencement of limitations periods in all claims, including those under state law, for personal injury relating to environmental contaminants. *O'Connor v. Boeing N. Am., Inc.*, 311

F.3d 1139, 1149 (9th Cir.2002). Under this statute, "if a state statute of limitations provides a commencement date for claims of personal injury resulting from release of contaminants that is earlier than the commencement date defined in § 9658, then plaintiffs benefit from the more generous commencement date." *Id.* at 1146. Because the California discovery rule looks at when plaintiff had reason to suspect, rather than reason to know, of his injury, the Ninth Circuit has held that CERCLA preempts California's discovery rule. *Id.* at 1146. However, under the facts of this case, the court doubts that § 9658

to Def. Manufacturer's Mot. to Dismiss 1.) The dispute here focuses solely on the application of that rule and whether plaintiff has satisfied the rule's requirements.

The delayed discovery rule tolls the statute of limitations, which "begins to run when the plaintiff has reason to suspect an injury and some wrongful cause," if "the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th 797, 803, 27 Cal.Rptr.3d 661, 110 P.3d 914 (2005). The rule allows causes of action based on distinct types of wrongdoing to accrue at different times, even though the claims arise out of the same injury to the plaintiff. *Id.* at 814, 110 P.3d 914 (allowing plaintiff who timely sued for medical malpractice to file a products liability claim for defective medical tools that would have been barred if the limitations period commenced when plaintiff first learned she had been injured); *Fireman's Fund Ins. Co. v. Sparks Const., Inc.*, 114 Cal.App.4th 1135, 1150, 8 Cal.Rptr.3d 446 (2004) (following the rule that regardless of when a party learns of an injury, claims for negligence and strict products liability are subject to the discovery rule and "[do] not accrue until discovery of the defect."). To invoke it, plaintiff "must plead facts to show his or her inability to have discover-ed the necessary information earlier despite reasonable diligence." *Id.* at 815, 110 P.3d 914.

Plaintiff first learned that the Center was contaminated in August 2001, which would normally be the date its claims accrued, as it was aware of the injury (property damage) and its cause (discharge of hazardous waste) on that date. *Dyniewicz v. United States*, 742 F.2d 484, 487 (9th Cir.1984) (holding that a cause of action accrues when plaintiff learns of an injury and the act that caused it, not when plaintiff discovers that negligence may have contributed to the injury); *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397, 87 Cal. Rptr.2d 453, 981 P.2d 79 (1999) ("The general rule for defining the accrual of a cause of action sets the date as the time . . . the wrongful result occurs. . . . An exception to [this] rule . . . is the discovery rule."). Thus, given the applicable three year statute of limitations, Claims Nine, Ten, and Eleven, filed on July 25, 2005, are potentially untimely. To avoid this bar, plaintiff relies on the discovery rule and its allegations that it did not know that the manufacturer defendants had "designed their products [10] and instructed and directed dry cleaners to install dry cleaning equipment specifically to discharge solvent-containing wastewater into drains" until 2004. (First Am. Compl. ¶¶ 29, 35.) The complaint is silent regarding plaintiff's diligence in discovering these facts [11] and plaintiff's claims

---

would be more permissive than the California discovery rule. *See* 42 U.S.C. § 9658 (commencement date is "the date the plaintiff . . . reasonably should have known that the . . . property damages . . . were caused or contributed to by the . . . contaminant concerned"). In addition, the parties have not argued that § 9658 should apply.

**10.** The manufacturer defendants argue that language in the complaint could be read to suggest that plaintiff's product liability claims rest on an inherently defective product design theory. (Pl.'s Opp'n to Def. Manufacturers' Mot. to Dismiss 10.) However, plaintiff clarified in its opposition brief that it seeks relief only on "a classic product liability claim based on inadequate product warnings and instructions." (*Id.*)

**11.** Plaintiff states in its complaint that it conducted a "diligent investigation", but this is a conclusion, not a fact. *See Leonard v. Coll. Network, Inc.*, No. C–04–00836, 2004 WL 2944050, at *4 (N.D.Cal. Dec. 17, 2004) ("Mere conclusory assertions that delay in discovery was reasonable are insufficient . . . .") (quoting *CAMSI IV v. Hunter Tech. Corp.*, 230 Cal.App.3d 1525, 1536–37, 282 Cal.Rptr. 80 (1991)).

as drafted thus cannot be saved by California's delayed discovery rule. *McKelvey v. Boeing N. Am., Inc.*, 74 Cal.App.4th 151, 160 n. 11, 86 Cal.Rptr.2d 645 (1999) ("[P]laintiff must plead (and later prove) the facts showing . . . [that] in the exercise of reasonable diligence the facts could not have been discovered at an earlier date").

Plaintiff correctly points out that the heightened pleading standard of the discovery rule seems to conflict with the liberal notice pleading standard in Federal Rule of Civil Procedure 8(a)(2). However, the Ninth Circuit has unequivocally held that in order to rely on a defense to a statute of limitations challenge provided by state law, plaintiff must meet the pleading requirements of that state law. *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir.1995) (recognizing that "plaintiff must allege specific facts establishing the applicability of the discovery-rule exception" but need not "specifically allege when the cause of action accrued"); *Gallardo v. DiCarlo*, 203 F.Supp.2d 1160, 1169 n. 13 (C.D.Cal.2002) (refusing to apply the discovery rule because plaintiff failed to plead facts addressing the time and manner of discovery and plaintiff's diligence). Claims Nine, Ten, and Eleven are therefore dismissed without prejudice.

### D. *Motion to Dismiss Defendant Hoyt*

■ Defendant Hoyt, the manufacturer of the equipment used in the Taecker's dry cleaning business, argues that it is not a liable party under CERCLA and thus seeks dismissal of Claims Two and Three (arising from CERCLA liability) and Claims Four and Five (arising from liability under California's HSAA, which is con-

ceptually similar to CERCLA). Hoyt also argues that Claims Six, Seven, and Eight fail to sufficiently allege a cause of action for nuisance and trespass.

· The Ninth Circuit has construed arranger liability under CERCLA as limited to those who (1) owned or possessed the hazardous materials at issue or (2) had some authority to control or duty to dispose of them. *United States v. Shell Oil Co.*, 294 F.3d 1045, 1058 (9th Cir.2002). Plaintiff does not contend that Hoyt ever owned or possessed the PCE responsible for contamination at the center and alleges only that Hoyt "[e]ffectively directed and controlled the discharge of PCE into the environment through their design and/or marketing of dry cleaning equipment [and] instructions, advice, and directions regarding assembly, installation, use and repair of the equipment." (First Am. Compl. ¶ 27(h).)

■ Hoyt correctly points out that the manufacturer of dry cleaning equipment who does nothing more than provide the machines and operating instructions is not an "arranger" of waste disposal under CERCLA. *Cal. Dep't of Toxic Substances Control v. Payless Cleaners*, 368 F.Supp.2d 1069 (E.D.Cal.2005) (determining that discharge instructions in operating manual are insufficient to support arranger liability; annual inspections of the equipment are possibly sufficient).[12] In a recent decision on a motion to dismiss in this district, Judge Karlton faced a similar situation. In *Payless Cleaners*, a PRP owner of a dry cleaning business sought contribution under CERCLA from the manufacturer of the dry cleaning equip-

---

**12.** *See also Berg v. Popham*, 307 F.3d 1028 (9th Cir.2002) (underlying district court case held that manufacturer of a machine that facilitated the disposal of hazardous chemicals is not liable under CERCLA); *Berg v. Popham*, 113 P.3d 604, 609 (Alaska 2005)

(adopting "a standard of arranger liability that is broader than that of the Ninth Circuit" and includes "actions such as designing, installing, or connecting a system that disposes of waste on behalf of a third party").

ment. *Id.* at 1075. Compared with plaintiff's allegations against Hoyt in this case, the plaintiff in *Payless Cleaners* alleged that Norge, the manufacturer, was much more involved in the dry cleaner's business. Significantly, the operations at issue involved a franchise agreement and the manufacturer not only designed the machines and provided instructions on their use, but also selected the location of the machines, installed them, and annually inspected them. *Id.* at 1080. In the end, Norge's installation activities sealed their fate, as they put Norge in a position to "actually control the disposal of the waste water laden with PCE." *Id.* Notably, however, the court rejected the plaintiff's arguments that product design and operating instructions were the proper grounds for a CERCLA contribution claim based on arranger liability.

As noted, plaintiff seeks to hold Hoyt responsible for arranger liability based on product design and operating instructions. But it also alleges more generally that Hoyt "[e]ffectively directed and controlled the discharge of PCE into the environment ...." Given the liberal notice pleading standard proscribed by Federal Rule of Civil Procure 8(a), such allegations are sufficient to survive a motion to dismiss. At the pleading stage, plaintiff need not describe in detail every way by which Hoyt controlled the discharge. General allegations of Hoyt's involvement have given it fair notice of the claims against it, which is all that the federal standard requires. If plaintiff's claims for arranger liability are indeed unmeritorious, then Hoyt will be able to use the "liberal discovery rules and summary judgment motions" to expose any legal weaknesses in plaintiff's claims

well before trial. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Accordingly, the court refuses to dismiss Claims Two and Three as to Hoyt.[13]

■ Claims Four and Five, alleging violations of California's HSAA, are likewise still alive in this action. HSAA, although not identical in all respects, "incorporates many CERCLA concepts." *Foster–Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal.4th 857, 865 n. 4, 77 Cal.Rptr.2d 107, 959 P.2d 265 (1998). The definition of arranger liability in particular is one such concept. Cal. Health & Safety Code § 25323.5(a)(1) (" 'Responsible party' ... means those persons described in Section 107(a) of the federal act ...."). Consequently, because plaintiff has sufficiently alleged that Hoyt is an arranger under the federal law, it has also sufficiently alleged arranger liability under HSAA.

■ Similarly contrary to Hoyt's contentions, plaintiff has sufficiently alleged claims of nuisance and trespass. Notwithstanding an effort to come within the California delayed discovery rule, plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517, (1993); *see also Sullivan ex rel. Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F.Supp. 947, 955 (E.D.Cal.1990) (recognizing that federal rules of civil procedure apply to state law claims when a court exercises pendent jurisdiction). "The Federal Rules of Civil Procedure do

---

**13.** The court notes that in permitting plaintiff to move forward with its allegations of arranger liability against Hoyt, it does not question Judge Karlton's reasoning in *Payless Cleaners,* where the court held that arranger liability must be based on more than the mere provision of instructions regarding disposal. Rather, the court here simply finds that the language in plaintiff's complaint is sufficiently broad enough to cover control based on activities other than those specifically described in the complaint.

not require a claimant to set out in detail the facts upon which he bases his claim." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99.

Hoyt argues that plaintiff has not sufficiently pled causation. Specifically, plaintiff has not alleged that the operators of the dry cleaning business actually relied on disposal instructions provided by Hoyt and defendant claims this omission is fatal. (Def. Hoyt's Mot. to Dismiss 9.) However, Hoyt has notice of plaintiff's claims (nuisance and trespass) as well as the grounds upon which they rest (provision of instructions). Plaintiffs need not allege every detail of their claims at the pleading stage, they need only allege facts sufficient to "implicate [i.e., suggest] the relevant legal theories." *Westways World Travel v. AMR Corp.,* 182 F.Supp.2d 952, 955 (C.D.Cal.2001) (quoting *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.,* 976 F.2d 58, 62 (1st Cir.1992)); *Woods v. Reno Commodities, Inc.,* 600 F.Supp. 574, 578 (D.Nev.1984) ("All elements that give rise to a legal basis for recovery need not be stated precisely, so long as fair notice of the nature of the action is provided." (citation omitted)). Plaintiff here has met this standard. *Cf. Payless Cleaners,* 368 F.Supp.2d at 1081 (allegations that defendant "designed and installed the machines and instructed the [operators] to dispose of wastes in a manner that resulted in a public nuisance" are sufficient pleadings).

### III. *Conclusion*

Defendants make a plausible argument that the combination of Supreme Court and Ninth Circuit law has eliminated a PRP's right to contribution for clean up activities undertaken voluntarily. However, in the interest of providing litigants with a uniform cause of action in this circuit and in light of pending appeals on this matter, the court will not dismiss plaintiff's claim for contribution under CERCLA section 107(a) and will postpone discovery on this claim until the Ninth Circuit offers more guidance on its viability. The court also holds that plaintiff has sufficiently pled claims of nuisance and trespass. Likewise, plaintiff has properly pled claims under CERCLA and HSAA for relief against Hoyt, the manufacturer of the dry cleaning equipment. Plaintiff's claims for strict product liability, negligence, and negligence per se against the manufacturer defendants, as pled, are, however, time barred.

IT IS THEREFORE ORDERED that defendants' motion to dismiss for failure to state a claim of contribution under CERCLA section 107(a) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendants' motion to dismiss the Ninth, Tenth, and Eleventh Claims as time barred be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant Hoyt's motion to dismiss be, and the same hereby is, DENIED.

Plaintiff is given 30 days from the date of this order to file an amended complaint consistent with this order. Discovery in this matter is STAYED pending the Ninth Circuit's resolution of a PRP's right to contribution for voluntarily incurred clean up costs.